IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW WHITFIELD, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| NET ELEMENT, INC., OLEG FIRER, JON | : **SECURITIES EXCHANGE ACT OF 1934** |
| NAJARIAN, JOHN ROLAND, and TODD | : |
| RAARUP, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1. On May 14, 2021, Net Element, Inc. ("Net Element" or the "Company") entered into an agreement (the "Merger Agreement") to merge with Mullen Technologies, Inc. ("Mullen Technologies"), Mullen Automotive, Inc. ("Mullen") and Mullen Acquisition, Inc. ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Net Element will issue shares of common stock to Mullen's shareholders.

3. On July 27, 2021, defendants filed a prospectus (the "424B3") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the 424B3 fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Net Element common stock.

9. Defendant Net Element is a Delaware corporation. Net Element's common stock is traded on the NASDAQ under the ticker symbol "NETE."

10. Defendant Oleg Firer is Chief Executive Officer and Chairman of the Board of Directors of Net Element (the "Board").

11. Defendant Jon Najarian is a member of the Board.

12. Defendant John Roland is a member of the Board.

13. Defendant Todd Raarup is a member of the Board.

14. Defendants identified in ¶¶ 10-13 are referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

15. Net Element operates a payments-as-a-service transactional and value-added services platform for small to medium enterprise in the U.S. and selected emerging markets.

16. On May 14, 2021, Net Element's Board caused the Company to enter into the Merger Agreement.

17. The press release announcing the Proposed Merger provides as follows:

Net Element, Inc. (NASDAQ: NETE) ("Net Element" or the "Company"), a global technology and value-added solutions group that supports electronic payments acceptance in a multi-channel environment including point-of-sale ("POS"), e-commerce and mobile devices, announced today that it has entered into a binding Letter of Intent to merge with privately-held Mullen Technologies, Inc. ("Mullen"), a Southern California-based electric vehicle company in a stock-for-stock reverse merger in which Mullen's stockholders will receive the majority of the outstanding stock in the post-merger Company.

Founded in 2014, Mullen expects to launch the Dragonfly K50, a luxury sports car, in the first half of 2021 through ICI (Independent Commercial Importers). Mullen currently has eight retail locations in California and one in Arizona. Immediately prior to completion of the merger, expected to occur in the third quarter (subject to various conditions to the merger, including Net Element's and Mullen's stockholders' approval, a fairness opinion satisfactory to the boards of Net Element and Mullen and other conditions), Net Element will, subject to Net Element's stockholders' approval, divest itself of its payments processing business and portfolio. If the merger receives the requisite approvals, at closing of the merger, the current management team and the board of directors of Net Element will also resign, except for Oleg Firer who will remain on as a board member, and be replaced by a management team led by Mullen's Founder, Chairman and Chief Executive Officer David Michery and the board of directors nominated by Mullen.

According to Mullen, Mullen also owns several synergistic businesses including: Mullen Auto Sales, a fast-growing series of automobile dealerships and CarHub, a new and unique digital platform that leverages Artificial Intelligence (AI) and offers a complete, easy-to-use solution for buying, selling and owning a car. To assist in the fight against a novel coronavirus pandemic (COVID-19), Mullen's subsidiary Smart 8 Energy recently began sourcing ventilators, COVID-19 antibody and virus test kits and Personal Protective Equipment (PPE). Subsequently, in May 2020, Mullen signed an agreement with Academy Medical, Inc. to sell its products to the U.S. Federal Government, including without limitation the U.S. Department of Defense, Department of Veterans Affairs, Department of Homeland Security, Indian Health Services, and Department of

Health and Human Services and their respective sub-agencies and facilities. The company has 15 patents or patents pending related to its electric vehicles technology, including nine in the United States.

The Dragonfly K50 has been featured at the New York International Auto Show on April 2019. The car also won the Governor's Choice Award at the 2019 Balboa Bay Club's Classic Auto Show. The K50 has also been the subject of stories in the Wall Street Journal, ABC News, Autoweek, MotorTrend and Forbes, among many other publications. A video of the launch of the car at the New York Auto Show can be seen here. Mullen is launching this car in conjunction with a cooperation agreement with Qiantu Motor, a wholly-owned subsidiary of CH-Auto, a leading automotive design and manufacturing company in China. Due to the COVID-19 pandemic, Mullen pushed the targeted date for ICI release of the Dragonfly K50 for 2nd quarter of 2021.

"We believe the timing of this merger is ideal for Mullen Technologies," said Mr. Michery. "It comes on the preparation of our launch of the Dragonfly K50, which will be available in Q2 of 2021 and through our retail network in California and Arizona and the development of a new EV model, the MX-05 Sport Utility Vehicle, that we expect the start of production next year. In addition, becoming public at this time should allow us to accelerate the development of our unique battery technology which is non-flammable, puncture proof, capable of maintaining full capabilities after 500,000 cycles, and is synthetic, requiring no mining of natural resources. We look forward to working with the Net Element team to complete the merger as quickly as possible."

According to Mullen, Mullen expects to be entering the market with a Sport Utility Vehicle (SUV) using an established and proven product, manufacturing and advanced technologies, and to be produced in the United States. According to Mullen, Mullen has created a different business model to enter the EV market with core tenants that include: fast-to-market, highly efficient, ready and proven initial vehicle leveraging an existing vehicle produced internationally and designed to U.S. market needs (development reduced from 4 years to 17 months), and complemented with a portfolio of competitively priced vehicles (three platforms) in the fast-growing Electric SUV segment. According to Mullen, the first SUV Mullen expects to introduce will be the MX-05, a mid-size luxury SUV that will be featured as a battery electric vehicle.

According to Mullen, due to launch in Q3-Q4 of 2021, the MX-05 represents Mullen Automotive's entry into the full-electric and range extender, luxury SUV market. The MX-05 is expected to fit the Mid-Size SUV segment. Mullen projects for pre-launch to have several hundred units produced in 2021 and kickoff into full production in 2022.

"We feel, after considering an array of strategic alternatives, that the agreement with Mullen provides our shareholders with the most compelling opportunity," said

Oleg Firer, Net Element's Chairman and Chief Executive Officer. "We conducted an extensive search of companies that have disruptive technologies, and believe that Mullen represents the best path forward. COVID-19 has created a unique set of challenges for our payment processing business, as many of our payment processing customers are located in the Northeast, which has been hit especially hard by the coronavirus. We expect that the merger with Mullen will create a new path forward that should reward our long-time shareholders."

**Transaction Structure**

The parties intend to structure the transaction as a reverse triangular merger whereby shareholders of Mullen would receive 85% ownership of a surviving entity at closing, with Net Element's investors owning 15%. Mullen shareholders would have an opportunity to earn an additional 5% in the event Mullen generates more than $100 million in revenue over the 24th months period post-closing. Closing of the transaction is conditional on the satisfactory completion of due diligence, shareholder and Nasdaq approval, and the completion of a capital raise of $10 million. Dilution from such financing is expected to be borne by the companies on a pro rata basis. Each of the parties Boards of Directors have unanimously approved the letter of intent for the transaction on a preliminary basis, with entering into a definitive agreement being subject to satisfactory fairness opinion and satisfactory due diligence, among other conditions. There can be no assurance that the merger will occur, or that the parties will enter into the definitive agreement for the transaction.

18.     On July 27, 2021, defendants filed the 424B3, which fails to disclose material information regarding the Proposed Merger.

<u>Financial Projections</u>

19.     The 424B3 fails to disclose Net Element's and Mullen's financial projections.

20.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

<u>Financial Analyses</u>

21.     The 424B3 fails to disclose material information regarding the financial analyses performed by Alexander Capital. When a banker's endorsement of the fairness of a transaction is

touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

22. Regarding Alexander Capital's Discounted Cash Flow Analysis, the 424B3 fails to disclose: (i) unlevered cash flows and the line items used to calculate them; (ii) Alexander Capital's adjustments to the projections; (iii) the terminal values; (iv) the inputs and assumptions underlying the discount rates and perpetual growth rates; and (v) the current outstanding shares.

23. Regarding Alexander Capital's Public Comparable Analysis, the 424B3 fails to disclose the individual multiples for the companies.

24. Regarding Alexander Capital's Present Value of Future Share Price Analysis, the 424B3 fails to disclose: (i) the financial projections; (ii) Alexander Capital's adjustments to the projections; and (iii) the inputs and assumptions underlying the discount rates.

<u>Potential Conflicts of Interest and Background of the Proposed Merger</u>

25. The 424B3 fails to disclose the fees Alexander Capital has received or will receive in connection with its engagement.

26. The 424B3 fails to disclose the amount of Alexander Capital's fee that is contingent on the closing of the Proposed Merger.

27. The 424B3 fails to disclose whether Alexander Capital has conducted prior services for the parties to the Merger Agreement, as well as the timing and details of the services and the fees received by Alexander Capital for providing the services.

28. The 424B3 fails to disclose whether the Company entered into any non-disclosure agreements that contained don't ask, don't waive provisions.

## COUNT I

**Claim Against the Individual Defendants and Net Element for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

29. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

30. The Individual Defendants disseminated the false and misleading 424B3, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

31. Net Element is liable as the issuer of these statements.

32. The 424B3 was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the 424B3.

33. The Individual Defendants were at least negligent in filing the 424B3 with these materially false and misleading statements.

34. The omissions and false and misleading statements in the 424B3 are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

35. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the 424B3 and in other information reasonably available to stockholders.

36. The 424B3 is an essential link in causing plaintiff to approve the Proposed Merger.

37. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

38. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

39. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Net Element within the meaning of Section 20(a) of the Exchange Act as alleged herein.

41. Due to their positions as officers and/or directors of Net Element and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 424B3, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the 424B3 alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

44. The 424B3 contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the 424B3.

45. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

47. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

48. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a 424B3 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  August 13, 2021               **GRABAR LAW OFFICE**

                                      By: _/s/ Joshua H. Grabar_
                                      Joshua H. Grabar (#82525)
                                      One Liberty Place
                                      1650 Market Street, Suite 3600
                                      Philadelphia, PA 19103
                                      267-507-6085
                                      jgrabar@grabarlaw.com

                                      *Counsel for Plaintiff*

10